UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOHN M. KULCSAR,

    Plaintiff,

    v.                                        Case No.: 3:15-CV-289-JVB-CAN

AUTOZONE, LLC,

    Defendant.

## OPINION AND ORDER

Plaintiff Kulcsar sued his former employer under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*). Plaintiff claims constructive discharge based on "pervasive age and sex—sex stereotyping discrimination," harassment, and retaliation for reporting the discrimination and harassment. (Amend. Compl., DE 27 at 2.) Defendant AutoZoners, LLC,[1] moved to dismiss the amended complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6).

### A.    Standard for evaluating a motion to dismiss

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleadings, not to decide the merits of the case. *See Gibson v. Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[1] AutoZoners, LLC, claims Plaintiff improperly named it as AutoZone, LLC, in the amended complaint.

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).[1]

As the Supreme Court stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id.* (citing *Twombly*, 550 U.S. at 556).

The Seventh Circuit synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

---

[1] In *Twombly*, the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

### B. Plaintiff's amended complaint

Plaintiff alleges the following. He involuntarily resigned from employment with Defendant on August 28, 2014, after five months of pervasive age and sex stereotyping discrimination, harassment, and retaliation for reporting the discrimination and harassment. Defendant failed to investigate his complaints thoroughly, and knowingly allowed the discrimination, harassment, and hostility to escalate.

On May 9, 2014, co-worker Quinton Cassell told Plaintiff that someone called the store to make a gun threat against Plaintiff. A few days later, two other co-workers, Glory Wendt and Jorge Marquez, apparently began telling Plaintiff that Cassell thought Plaintiff was incapable, slow, gay, and did not belong there.

On May 13, 2014, Marquez told Plaintiff that Cassell tried to have acquaintances make complaints in an effort to cause Plaintiff's termination. The same day, Plaintiff reported this to Chris Carpio, the store manager. Yet no one addressed or recorded Plaintiff's grievance.

On May 15, 2014, Carpio retaliated against Plaintiff by citing him for a minor infraction of a rule not commonly enforced.

On May 27, 2014, Wendt called Plaintiff from the store and Plaintiff heard Cassell say in the background, "you are no better than that faggot John."

On May 28, 2014, Plaintiff reported this incident to Carpio. On the same day, Marquez told Plaintiff that Cassell said he knew how to deal with people like Plaintiff and knew how to get rid of him. Also on that day, two sequenced seals disappeared, making it impossible for Plaintiff to complete a particular task. (Plaintiff doesn't say why the seals disappeared, but he

implies sabotage.) Carpio made Plaintiff pay for a cash register error greater than $30 and reprimanded him.

On June 3, 2014, Cassell failed to open the store on time, but did not receive any disciplinary action.

Through the end of June 2014, Carpio and Cassell heckled Plaintiff in front of customers about being bi-polar, having a low IQ, and having degenerative cognitive disease. (Plaintiff denies ever having these conditions.) Plaintiff complained to Carpio about this but Carpio was dismissive.

On July 8, 2014, Carpio issued Plaintiff a fourth corrective action. (Plaintiff presents reasons why this corrective action and two others were unjust. Plaintiff claims he received each corrective action within days of reporting harassment to Carpio.) Plaintiff claims he "was now being transferred to another location based upon performance issues that did not exist." (Amend. Compl., DE 27 at 5.) Plaintiff claims the transfer was "essentially a demotion to a far smaller, less demanding and challenging location . . . to avoid addressing the underlying discrimination, harassment and retaliation." (*Id.*) The attempted transfer humiliated Plaintiff.

On July 17, 2014, Lecta, an employee at the new store, called Plaintiff and told him she knew the transfer was based on pretext and that Plaintiff had no performance issues. Lecta (directly or indirectly—the complaint is unclear) confirmed Plaintiff's suspicions that the difficulties resulted from his sexual orientation, which Plaintiff had not disclosed.

On July 19, 2014, co-worker Zalazar said to a customer near Plaintiff, "his gay ass is being transferred in a few days." (*Id.* at 6.) Later that day, another co-worker told Plaintiff that Carpio and Cassell were mistreating Plaintiff because he is gay.

4

On July 20, 2014, co-workers told Plaintiff that Cassell's conduct was escalating to include threats of physical violence against Plaintiff. (Plaintiff does not allege Cassell made threats of physical violence to Plaintiff.)

Plaintiff then called the AutoZone employee hotline for the third time. He complained about the escalation of discrimination, harassment, and retaliation. He complained of fearing for his safety and he complained about the pending transfer based on pretext. He eventually spoke with higher-level representatives. Plaintiff claims Rice, human resources generalist, selectively documented the information.

By July 28, 2014, the unjust transfer and corrective actions were repealed. Plaintiff called Bush, in divisional human resources, to ask why nothing had been done to correct the problems except repeal of the transfer and corrective actions. Bush told Plaintiff his claims were denied.

On August 15, 2015, Wendt and Cassell conspired to incite two customers against Plaintiff. One of these customers waited in his car in front of the store for an hour, watching Plaintiff.

Plaintiff complained to Carpio, but nothing was done to redress the problem. Instead, on August 26, 2014, Plaintiff was reprimanded on the basis of false statements about customer complaints that never occurred and on the basis of false accusations of misconduct.

Plaintiff's amended complaint does not (and needs not) present neat counts delineating the claims. Instead, the amended complaint cites Title VII as its basis and provides:

> "CONSTRUCTIVE DISCHARGE. PLAINTIFF INVOLUNTARILY RESIGNED 8/24/14 FOLLOWING 5 MONTHS OF PERVASIVE AGE AND SEX—SEX STEREOTYPING DISCRIMINATION, HARASSMENT AND RETALIATION FOR REPORTING THE DISCRIMINATION AND HARASSMENT."

5

(Amend. Compl., DE 27 at 2.) The amended complaint provides the factual narrative summarized above, with the words "harassment," "discrimination," and "retaliation" sprinkled throughout. Defendant characterizes the amended complaint as attempting to state claims for age discrimination, sex stereotyping discrimination, hostile work environment based on age, hostile work environment based on sex stereotyping, constructive discharge, and retaliation.[2] In his response, Plaintiff does not challenge this characterization. Indeed, the only claims Plaintiff defends in his response are claims for "sexual harassment due to the stereotype of 'maleness;'" constructive discharge due to the harassment; and age discrimination, harassment, and retaliation.

Defendant moves to dismiss on the grounds that Plaintiff (1) failed to state a claim for age or gender discrimination or "sex stereotyping" discrimination, (2) failed to state a claim for hostile work environment based on age or gender or "sex stereotyping," (3) failed to state a claim for constructive discharge, and (4) failed to state a claim for retaliation.

C.  Discussion

Plaintiff brings his claims under Title VII of the Civil Rights Act of 1964, as amended, which prohibits certain employers[3] from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" and prohibits certain employers from discriminating

---

[2] In an opinion decided July 28, 2016, and amended August 3, 2016, the Seventh Circuit followed the precedent that Title VII does not prohibit discrimination based on sexual orientation. *Hively v. Ivy Tech Cmty. Coll.*, 830 F.3d 698, 702 (7th Cir. 2016). On October 11, 2016, however, the Seventh Circuit granted rehearing *en banc*, and vacated the panel's opinion. *Hively v. Ivy Tech Cmty. Coll.*, No. 15-1720, 2016 WL 6768628, at *1 (7th Cir. Oct. 11, 2016).
[3] Defendant does not dispute that it is an "employer" as defined by 42 U.S.C. § 2000e(b).

against any employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). Defendant moves to dismiss Plaintiff's claims for failure to exhaust administrative remedies and for failure to allege a materially adverse employment action.

**(1)** *Law*

(a) *Exhaustion of administrative remedies*

Plaintiff claims his resignation on August 28, 2014, following five months of pervasive age and "sex—sex stereotyping" discrimination, harassment, and retaliation for reporting the discrimination and harassment, constituted constructive discharge in violation of Title VII of the Civil Rights Act. Plaintiff also claims he suffered other violations of Title VII.

As a pre-requisite to bringing such claims in court, Plaintiff must exhaust his administrative remedies by filing a charge with the appropriate agency. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). Title VII lawsuits must be based on the same claims as those stated in the EEOC charge, or at least must be "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Plaintiff may not bring a lawsuit for Title VII discrimination that does not grow out of an EEOC retaliation charge. *Sitar v. Ind. Dep't of Trans.*, 344 F.3d 720, 727 (7th Cir. 2003).

Courts review the scope of an EEOC charge liberally. *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 831 (7th Cir. 2015). The relevant litigated claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals. *Id.* at 831–832. A claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related simply because they both assert some form of sex discrimination. *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994). "The claims are not alike or reasonably related unless there is a factual relationship between them." *Id.* The requirement of some specificity in an EEOC charge is not a mere technicality. *Id.*

A court will dismiss a claim in a complaint for failure to exhaust when the EEOC charge does not specifically describe the conduct giving rise to that claim. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111–12 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110.

To satisfy the exhaustion prerequisite, an EEOC charge must contain some detail, beyond a mere statement that "I believe I have been discriminated against on the basis of my race, Caucasian, gender, age (45), harassed and retaliated against in violation of Title VII . . . ." (EEOC Charge, DE 28 at 5.) *See Rush*, 966 F.2d at 1111. The Seventh Circuit held that "it will not suffice to file general charges with the EEOC . . . and then to expect that this allegation will permit all claims of . . . discrimination in a subsequent lawsuit." *Id.* at 1112.

Here, Plaintiff filed an EEOC charge alleging discrimination based on race, sex, retaliation, age, and genetic information. Next to "OTHER," Plaintiff claimed "Harassment." (EEOC Charge, DE 28 at 5.) In this EEOC charge, Plaintiff claimed:

1) He was constructively discharged due to a hostile work environment;

2) Cassell enlisted friends to stage complaints against him;

3) Plaintiff reported this to Carpio to no avail;

4) Plaintiff received "write ups" and "felt compelled to refuse an unjust transfer";

5) Plaintiff "endured comments from Carpio and Cassel of being Bi-polar";

6) Cassell's "escalating behavior" caused Plaintiff to fear for his safety;

7) Other incidents of harassment "too numerous to list here";

8) An "August 15 incident" which "led to Respondent threatening" his employment and to his inability to remain in such a "toxic environment";

9) Discrimination based on race, with no supporting facts;

10) Discrimination based on gender, with no supporting facts;

11) Discrimination based on age, with no supporting facts; and

12) Harassment and retaliation in violation of Title VII and the ADEA, with no supporting facts.

(*Id.*)

Defendant claims Plaintiff failed to exhaust his administrative remedies on his claims for discrimination, harassment, retaliation, and constructive discharge based on age and sex-stereotyping.

(b)     *Materially adverse employment action, and alteration of working condition*

Title VII does not establish "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80 (1998).

An essential element of every Title VII employment discrimination claim is a materially adverse employment action. "The requirement that a plaintiff show [he] suffered an adverse employment action as a result of [his] employer's alleged discrimination is an element of any Title VII claim." *Chaib v. Ind.*, 744 F.3d 974, 982 (7th Cir. 2014). An adverse employment action must "materially alter the terms and conditions of employment." *Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). A reprimand, without more, is not an adverse employment action. *Id.* at 987. A mere inconvenience or a minor change in working conditions is not a materially adverse employment action. *Nichols v. S. Ill. Univ.*, 510 F.3d 772, 780 (7th Cir. 2007). A lateral transfer not involving demotion in form or substance is not a materially adverse employment action. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004) (internal quotation marks omitted).

Similarly, a Title VII harassment claim requires an allegation of harassment "sufficiently severe or pervasive so as to alter the condition of . . . employment and create a hostile or abusive atmosphere." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). A hostile work environment exists where an employee experiences harassment "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712–13 (7th Cir. 2000).

10

Likewise, a retaliation claim requires a materially adverse employment action, causally connected to Plaintiff engaging in statutorily protected activity. *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016).

Defendant argues Plaintiff's amended complaint should be dismissed for failure to plead a materially adverse employment action, or an actionable alteration in the condition of employment.

**(2)** *Claims*

(a) *Age-based claims*

Plaintiff's amended complaint faces multiple problems regarding age-based claims, including problems related to the lack of exhaustion and materially adverse employment action.

As a threshold matter, the amended complaint cannot state an age-based Title VII claim because there is no such thing, and the amended complaint does not even attempt to state an ADEA claim. The amended complaint purports to bring claims under Title VII based on discrimination, harassment, and retaliation involving Plaintiff's age, but Title VII does not prohibit discrimination, harassment, or retaliation based on age. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 465 n.4 (1982) ("No further mention was made of age discrimination, which is not covered by Title VII.") The Age Discrimination in Employment Act does. 29 U.S.C. § 621 *et seq.* But Plaintiff did not check the line next to this statute in the "BASIS OF CLAIM AND JURISDICTION" section of his amended complaint form. In other words, Plaintiff does not even purport to state an ADEA claim in his amended complaint.

11

But even if he had checked the ADEA box—and another amendment could easily cure this—Plaintiff's age claims still face an exhaustion problem because although the EEOC charge includes a mark in the "AGE" box, and although the EEOC charge says Kulcsar was discriminated against on the basis of his "age (45)" and references the ADEA, the EEOC charge provides no basis for thinking Kulcsar's age factored into anything. *Rush*, 966 F.2d at 1111–12.

And even if the Court resolved this problem in Plaintiff's favor by concluding that the age claims Plaintiff purports to bring in his lawsuit are "like or reasonably related to the allegations of the [administrative] charge" and grow out of such allegations, Plaintiff's age claims still face a Rule 12(b)(6) problem. Plaintiff's amended complaint makes no factual allegations about Plaintiff's age or about anyone doing anything based on his age. To state a claim for age discrimination under the ADEA, Plaintiff must allege Defendant subjected him to adverse employment action because of his age. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 453 (7th Cir. 2011). To state a claim for retaliation related to age, Plaintiff must allege he engaged in statutorily protected activity, he suffered a materially adverse action, and the two are causally related. *See id.* at 455.

Here, Plaintiff failed even to allege in his amended complaint anything about his age other than the bare legal conclusion that he suffered age-based discrimination, harassment, and retaliation. Plaintiff failed to allege any factual basis for thinking that his age had anything to do with anything. Plaintiff failed to allege that he engaged in any activity protected by the ADEA. Plaintiff's amended complaint fails to satisfy *Iqbal* and *Twombly* regarding any age-based claims. It fails to raise the prospects of Plaintiff's claims regarding age above the speculative level to the plausible.

Plaintiff attempts to cure this failure in his response to the motion to dismiss. He alleges that everyone in the store where he worked was under the age of 30; all the discrimination, harassment, and retaliation was committed by people younger than him; he was the only person who was "treated so egregiously and discriminated against"; and he was the only full-time employee in the store over the age of 40. But even in this response, Plaintiff fails to allege any facts to support a causal connection between his age and any adverse employment action. Merely alleging that the people who discriminated against him were younger than him is insufficient.

Therefore, the Court dismisses all of Plaintiff's claims based on his age.

(b) *Gender/sex-stereotyping claims*

Plaintiff's amended complaint also faces problems regarding gender/sex-stereotyping claims.

First, Plaintiff failed to exhaust these claims. In his EEOC charge, he checked the box next to "SEX" and he included the closing line: "I believe I have been discriminated against on the basis of my . . . gender . . . ." (EEOC Charge, DE 28 at 5.) But his EEOC charge mentions no facts to support any Title VII gender claim. This failure-to-exhaust alone requires dismissal of Plaintiff's gender/sex-stereotyping claims. *See Rush*, 966 F.2d at 1111–12.

Second, Plaintiff's amended complaint fails on its face to state a gender/sex-stereotyping claim. The Supreme Court identified sex-stereotyping as an impermissible form of discrimination. *Price Waterhouse v. Hopkins,* 490 U.S. 228, 235 (1989). Like other forms of discrimination, a claim for sex-stereotyping discrimination requires an allegation of an adverse

employment action. *See Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1064 (7th Cir. 2003).

Similarly, a claim for sex-stereotyping harassment requires an allegation of harassment that is sufficiently severe or pervasive to alter the condition of employment and create a hostile or abusive atmosphere. *See Kampmier*, 472 F.3d at 940. And a claim for hostile work environment based on sex-stereotyping requires an allegation that the work environment was subjectively and objectively offensive and that the challenged conduct was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment. *See Huri*, 804 F.3d at 833–34.

Yet Plaintiff failed to allege a materially adverse employment action regarding the gender/sex-stereotyping claims, and failed to allege harassment sufficiently severe or pervasive to alter the condition of employment and create a hostile or abusive atmosphere.

Plaintiff alleges Cassell told him on May 9, 2014, that a gun threat had been phoned into the store against Plaintiff, but Plaintiff does not allege Cassell fabricated this threat. Plaintiff alleges various instances of second-hand comments, but "the impact of second-hand harassment is obviously not as great as the impact of harassment directed at the plaintiff." *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1145 (7th Cir. 1997) (internal quotation marks omitted). Plaintiff alleges various corrective or disciplinary actions taken against him, but these do not constitute materially adverse employment action, or alter the condition of his employment. Plaintiff alleges that for about a week toward the end of June 2014, Carpio and Cassell heckled Plaintiff about being bi-polar, having a low I.Q., and having degenerative cognitive disease, but these comments do not involve gender or gender-stereotyping. Plaintiff alleges his employer

considered transferring him to another location, but the transfer never actually happened, so it is not a materially adverse employment action or a material alteration of the condition of employment. Plaintiff alleges an incident on August 15, 2014, during which his co-workers incited two customers against him. But this does not rise to the level of a materially adverse employment action or a material alteration of the condition of employment. Plaintiff states no facts to support any allegation of danger.

Accordingly, the Court dismisses Plaintiff's gender/sex-stereotyping claims.

(c)  *Constructive discharge*

To plead a claim for constructive discharge, a plaintiff must allege facts that demonstrate "not only . . . that a hostile work environment exists but also that the abusive working environment was so intolerable that [his] resignation was an appropriate response." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004).

Here, Plaintiff failed to bring an EEOC claim for constructive discharge based on age or gender/sex-stereotyping, and Plaintiff failed to allege facts in his amended complaint sufficient to state a claim for constructive discharge.

Therefore, the Court dismisses Plaintiff's claim for constructive discharge.

(d)  *Retaliation*

To plead a retaliation claim, a plaintiff must allege: (1) he engaged in statutorily protected activity, (2) he was subjected to a materially adverse employment action, and (3) a causal connection between the two. *See Huri*, 804 F.3d at 833.

Here, Plaintiff failed to bring an EEOC claim for retaliation involving any activity protected by Title VII. His EEOC charge merely alleged that on May 18, 2014, he reported efforts to stage complaints against him to a store manager and that he contacted "Corporate" in late July 2014 (about what he does not say in his EEOC charge) and "some corrective actions were taken" (again, the EEOC charge is vague). (EEOC Charge, DE 28 at 5.) Plaintiff thus failed to claim engagement in statutorily protected activities in his EEOC charge. Nor does Plaintiff claim in his amended complaint that he suffered any retaliation after he filed the EEOC charge. This is sufficient grounds to dismiss the retaliation claims. *See Reynolds v. Tangherlini*, 737 F.3d 1093, 1009 –1100 (7th Cir. 2013).

Therefore, the Court dismisses Plaintiff's retaliation claims.


**D.     Conclusion**

The Court dismisses Plaintiff's amended complaint (DE 27).


**SO ORDERED** on February 24, 2017.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE